HELEN PRUITT, APPELLEE, v. LINCOLN CITY LINES, APPELLANT.

22 N. W. 2d 651

FILED APRIL 26, 1946. No. 31999.

*F. B. Baylor* and *George Healey,* for appellant.
*Chambers & Holland,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

Plaintiff, a passenger on defendant's common carrier bus, instituted this action to recover for personal injuries. A jury awarded her a verdict for $2,000, upon which judgment was entered. Motion for new trial was overruled and defendant appealed to this court. Assignments of error are substantially that (1) the trial court erred in giving instruction No. 9; (2) that the verdict is contrary to law, not sustained by the evidence, and excessive; and (3) that the trial court erred in its refusal to grant a new trial on the ground of newly discovered evidence. We find that defendant's contentions cannot be sustained.

The theory of plaintiff's case, as reflected in her petition, was that she was a paid passenger, sitting on the right

side of defendant's bus as it proceeded east between 19th and 20th on O Street in Lincoln where it collided with a car parked on the south side of O Street. Plaintiff claimed that the operator of the bus was negligent because in view of the weather conditions he failed to keep a proper lookout for other vehicles on the street, failed to have the bus under reasonable and proper control, and failed to operate it so as to avoid striking the parked car with which it collided, thereby proximately causing the accident and resulting painful and permanent injuries to plaintiff.

Defendant's theory of defense, as reflected in its answer, was that the operator of the bus was not negligent and that if plaintiff suffered any damages they were proximately caused by the negligence of the driver of the parked car who negligently without warning, and in violation of city traffic ordinances, suddenly backed his car out from the curb into the bus without opportunity for the operator to see the movement or avoid the accident.

Hereinafter the driver of the bus will be called the operator and the owner of the car the driver.

The record discloses that the parties each respectively offered competent evidence in support of or denial of the issues thus presented which were submitted to the jury by appropriate instructions, unless, as contended by defendant, instruction No. 9 was erroneously given. To determine that question we must consider all of the instructions given by the trial court in the light of the duty imposed upon defendant in such cases.

In that connection it is the rule that: "Instructions are to be considered together, to the end that they may be properly understood, and, when so construed, if as a whole they fairly state the law applicable to the evidence, error cannot be predicated on the giving of the same." Gallagher v. Law, 135 Neb. 381, 281 N. W. 806.

With reference to the duty of defendant, it is the rule that common carriers of passengers, such as city bus lines, are required to exercise the utmost skill, diligence, and foresight consistent with the business in which they are

engaged for the safety of their passengers and they are liable for the slightest negligence proximately causing injury. Fielding v. Publix Cars, Inc., 133 Neb. 818, 277 N. W. 331.

As we construe instruction No. 9, it fairly presented to the jury defendant's theory of defense, recited the above duty lawfully imposed upon the operator of the bus in connection therewith, and informed the jury that defendant would not be liable for negligence if it found that the car suddenly backed out without warning, thereby giving the operator of the bus no reasonable opportunity to avoid the accident. As so construed the instruction could not be prejudicial to defendant.

Defendant in its brief contends that the instruction permitted plaintiff in effect to recover upon a theory that the accident was proximately caused by the concurrent negligence of the driver and operator which was not pleaded in her petition. However, if the instruction could be so construed, which we believe it could not, we are forced to arrive at the same result. Under the issues presented by the pleadings and evidence adduced in support thereof, we are unable to hold that plaintiff's petition was so narrow and restrictive in theory as to exclude operation of the rule that "A common carrier of passengers is liable for personal injuries to a passenger, if caused by the concurrent negligence of the carrier's servant and third persons." Daly v. Publix Cars, 128 Neb. 403, 259 N. W. 163.

Further, an examination of all the instructions given discloses that the latter theory appears in other instructions of which no complaint is made by assignment of error in this court. Our conclusion is, therefore, that the trial court did not err in the giving of instruction No. 9.

Defendant next contends that the verdict is contrary to law, not sustained by the evidence, and excessive. The record discloses that part of the evidence is undisputed. That part is as follows: It was snowing heavily on the day of the accident which happened between 4 and 4:30 p. m., April 17, 1944. The snow was sticking to the windows of

the bus but the front window wipers were working efficiently and the view from the side windows was only partially obstructed. The streets were slushy and wet. Plaintiff was 29 years of age, married, and the mother of five young boys. At the time of the accident, she was a paid passenger on defendant's bus and sat near a window on the right side, just ahead of the back door. The bus, crowded with people standing in the aisles, was proceeding east on O Street between 19th and 20th, on the inside traffic lane, about three feet from the back of parked cars. Until the bus reached a point near the accident it was traveling without chains from 15 to 20 miles an hour. The bus and a car belonging to another collided. Plaintiff did not see the accident. At the time of the impact she was thrown forward and back against the window winder, bumping her right arm above the elbow nearer the shoulder. After the accident the operator asked if anyone was injured. Plaintiff said "her arm was injured," that "she was hurt." At the scene of the accident she filled out an accident card reciting, among other things, that she was "Bumped." The defendant's physician was called but believing that she was not seriously injured, plaintiff did not go to the physician's office and he did not examine her at that time. She rode home on the relief bus.

The record discloses that the evidence of the respective parties relating to the cause of the accident and the extent of plaintiff's injuries is primarily in irreconcilable conflict.

The driver testified that he parked his car 18 to 25 inches from the south curb because snow moved from the sidewalk to the street prevented parking against the curb. He said in substance that two or three others had parked their cars west of his in a similar manner and that some of the parked cars extended a few inches farther out into the street than others. One such car had moved out before the accident.

The driver testified that he came out of an auto parts store nearby and as he was getting into his car, before he

had time to start his motor or even shut his car door, defendant's bus ran into the middle to left side of the back of his car and then proceeded at an angle toward the center of the street, stopping with the back end thereof close to the rear of his car. A police officer who testified for defendant but did not see the accident, although he was on the sidewalk nearby, stated that after the bus stopped the driver's car stood near the center of the bus, two or three feet from it.

On the other hand the operator testified for defendant that when he was 10 or 12 feet back of the car and about three feet out into the street, the driver, without warning, suddenly backed his car out from the curb into the bus. The operator said in substance that in the distance of 10 or 12 feet he swung to the left about two feet to avoid the car but was unable to do so. Thereafter, upon observing that there would be a collision, he put on his brakes, slowed down, and the middle of the back of the car hit the bus on the right front corner. The bus immediately following the impact continued east on O Street for a distance of about 30 feet before stopping. The operator testified that he did so purposely to clear traffic. The right front corner of the bus was struck, the adjacent right front door hinge was damaged, jamming the right front of the bus door so that it would not operate. Evidence was also adduced by defendant that there was no snow piled at the curb and that all cars at that time were parked against the curb.

Defendant contends the verdict is not supported by the evidence and is contrary to law because physical facts demonstrate that the accident could not have happened as plaintiff claims, but could only have happened if the car backed out into the bus, in the manner claimed by defendant. The physical facts relied upon are that other cars being parked in a similar manner west of the car with which the bus collided made it impossible for the bus coming from the west to be struck on the side unless the driver of the car was backing out.

With reference to physical facts it is a rule that "If but

one inference may be arrived at in the minds of reasonable men from an examination of the physical facts, then that inference must be accepted, but if with equal force and propriety an opposite inference or inferences may be drawn the question becomes one for the jury." Jones v. Union P. R. R. Co., 141 Neb. 112, 2 N. W. 2d 624. The same rule has been restated recently as follows: "The physical facts are sufficient to bar a recovery for negligence only when they indisputably demonstrate that the collision out of which the cause of action arose was not caused by the party charged." Riekes v. Schantz, 144 Neb. 150, 12 N. W. 2d 766.

In that regard we call attention to the fact that a bus is capable, as a streetcar is not, of turning in any direction on the street by the action or inaction of the operator. We are unable to find that the physical facts relied upon could have prevented the operator of defendant's bus from turning it or permitting it to turn into the car, howsoever the evidence might show other cars were parked, or from failing to turn out and avoid striking the car involved if protruding into the street. Further, defendant's operator affirmatively testified that the bus was struck on the right front corner and that the driver did not back into the side of the bus.

We conclude that the physical facts relied upon by defendant do not indisputably demonstrate that the collision was not caused by the negligence of the operator of the bus.

We inquire then whether the verdict was excessive. This court has held that "The verdict of a jury based upon conflicting testimony will not be disturbed unless clearly wrong." Hahn v. Doyle, 136 Neb. 469, 286 N. W. 389. It is also the general rule that "It will not be presumed that passion and prejudice influenced the minds of jurors. That influence must appear from the record before a new trial will be granted for that reason.

"Where there is no prejudicial error found in the record and the verdict of a jury has sufficient competent evidence

to support it, the judgment will be affirmed." Hickey v. Omaha and Council Bluffs Street Ry. Co., 140 Neb. 665, 1 N. W. 2d 304. See, also, Van Auker v. Steckley's Hybrid Seed Corn Co., 143 Neb. 24, 8 N. W. 2d 451.

The plaintiff, her mother who lived nearby, a soldier's wife who lived with plaintiff, and plaintiff's physician all gave competent evidence for plaintiff bearing upon the question of her disability. That evidence was substantially as follows: On the evening of the accident, after plaintiff arrived home, sharp pains appeared in plaintiff's arms and shoulder, her arm became discolored and swollen, and she was nauseated. This is verified in part by one of defendant's own witnesses who testified that plaintiff's arm and hand were swollen up that night and that plaintiff's arm was hurting badly the next morning when they went to the doctor. Plaintiff's physician was called by telephone the evening of the accident. He advised the use of hot packs until he could see her the next day. The next day he examined plaintiff, taped her arm, and put it in a sling. He gave her a sedative and advised rest. Thereafter, he saw plaintiff every day for approximately 10 days, then twice a week for several weeks, and thereafter occasionally until the trial.

Evidence was also adduced to the effect that plaintiff was in good health before the accident and able to perform all of the specific, arduous household duties for a family of seven but since the accident has been unable to do so without assistance; and that she could perform the easier more simple tasks and some days was able to do more than others, but although somewhat improved was still disabled at the time of trial. Plaintiff claimed that she had suffered pain continuously for some time after the accident, and even at the time of trial suffered pain at intervals in her shoulder, neck, and back, and that her right hand had lost grip, swelled, and became numb in the mornings. She claimed that she could not raise her arm in certain positions without pain. Her physician testified in support thereof and said he was of the opinion that as a re-

sult of her injury in the accident, plaintiff suffered a permanent partial injury to the nerve supplying the deltoid muscle which made it weak in action with limitation of motion at right angles to her body. He testified that plaintiff had objective symptoms of injury at first but that later they were only subjective. Since the accident plaintiff has had an appendectomy and some heart difficulty for which it was not claimed that the accident was in any way responsible.

Two physicians testified for defendant upon the question of plaintiff's alleged disability. One was the company physician who examined plaintiff for the first time, approximately six months after the accident. He testified in substance that although plaintiff complained that she was unable to move her arm in certain respects without pain, his examination disclosed no objective symptoms of injury or disability. The other physician examined plaintiff on December 5, 1944, and took X-rays of her neck and shoulder. His testimony was to the effect the plaintiff could use her arm and raise it up to a certain point but that she complained of pain beyond that point. However, his testimony is also that he could find no objective symptoms of injury or disability. Both physicians admitted at the time of trial that plaintiff's hand was then slightly swollen but gave as their opinion that it could have resulted from nonuse.

Plaintiff was an employee of a Lincoln candy company for six days in 1944. Three employees of that company testified for defendant. Their evidence is substantially that when plaintiff took the position she filled out an "APPLICATION FOR TEMPORARY EMPLOYMENT," answering questions of physical fitness. One was "What Special Ailments or Diseases Have You Had?" She answered "None." The plaintiff, however, told the supervisor that she had been injured in an accident and had a suit pending.

During the week ending October 21, 1944, plaintiff worked for the candy company from Thursday to Sunday,

inclusive, 34 hours, and the week ending October 28, Tuesday and Wednesday, inclusive, 18 hours. During that period she occasionally packed candy but for the most part carried candy trays to the packers. Each tray weighed approximately three pounds. They were taken from cupboard shelves, starting from the top, the highest of which was 5.10 to 6.2 feet from the floor, and delivered to the packers. The work required the use of both arms. Sometimes plaintiff carried from one to three trays at once. The employees testified that the work was not heavy but monotonous; that plaintiff seemed to have no difficulty in performing it and used both arms to do so without complaint. In rebuttal plaintiff admitted that she worked for the company but said she was unable to work Monday of the second week because her fingers were swollen tight so that she could not open them and that she quit because she could not stand the work.

Another witness for defendant, who lived near plaintiff, testified that she had observed plaintiff using her arm in performing all kinds of specific, arduous household duties which plaintiff had testified she could not do. The witness also testified that plaintiff did not wear her arm in a sling at home but told the witness that she did wear the sling when she went out so that no one could see her without it. In rebuttal plaintiff admitted that she went without the sling part of the time upon the doctor's instructions in order to assist circulation.

The testimony, it will be observed, is almost squarely in conflict on the question of the extent of plaintiff's disability. We find no prejudicial error in the record. The verdict is supported by competent evidence. Under the circumstances presented, this court cannot usurp the functions of a jury and set it aside. Therefore, we are unable to sustain defendant's contention that it is excessive.

Defendant in motion for a new trial supported by five affidavits, which appear in the record, asked for a new trial on the ground of newly discovered evidence. One such affidavit related primarily to the manner in which plain-

tiff claimed that she suffered the injury, another related to the extent of plaintiff's alleged disability, and the other three, made by counsel for defendant, related to due diligence.

It has long been established in this jurisdiction that whether a motion for a new trial should be sustained or overruled rests in the sound judicial discretion of the trial court bearing in mind the rule that "A new trial will not be granted upon the ground of newly discovered evidence, where such evidence is merely cumulative or impeaching or not of such controlling force as would probably change the result of the trial." Killion v. Dinklage, 121 Neb. 322, 236 N. W. 757. See, also, Miller v. Crosson, 133 Neb. 892, 277 N. W. 796.

After examination of defendant's affidavits in support of the motion, together with the record before us, we conclude that the trial court did not err in overruling defendant's motion for a new trial.

For the reasons heretofore stated, the judgment of the trial court is affirmed.

AFFIRMED.